**John E. KALLICH, Plaintiff,**

v.

**NORTH IOWA ANESTHESIA ASSOCIATES, P.C., Defendant.**

**No. C 00–3052–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Jan. 10, 2002.

Charles Hendricks, Lipman Law Firm PC, Clive, IA, for plaintiff.

Randall E. Nelsen, Jay M. Shriver, Pappajohn–Shriver–Eide–Nicholas, Mason City, IA, for defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................1045

II. LEGAL ANALYSIS ............................................1047
   A.   Standards For Summary Judgment...................................1047
       1.   Requirements of Rule 56 .......................................1047
       2.   The parties' burdens .........................................1047
   B.   Discharge In Violation Of Public Policy ...............................1048
       1.   Arguments of the parties .....................................1048
       2.   Analysis .................................................1049
   C.   Breach Of Covenant Of Good Faith And Fair Dealing ....................1052
   D.   Detrimental Reliance .............................................1052

III. CONCLUSION ................................................1053

In this diversity action, plaintiff John E. Kallich asserts common-law claims arising from the termination of his employment with defendant North Iowa Anesthesia Associates, P.C. (NIAA). More specifically, Kallich contends that he was wrongfully discharged in violation of public policy after he expressed concerns about patient care and handling of patients by colleagues at the anesthesia practice; that he was

terminated in violation of the covenant of good faith and fair dealing implied in his employment contract; and that his termination was contrary to reasonable expectations, on which he detrimentally relied, that he would be employed for an extended period of time, not just a few weeks.[1] This matter comes before the court pursuant to NIAA's September 6, 2001, motion for summary judgment on all of Kallich's claims. Kallich requested and received an extension of time to resist the motion for summary judgment, ultimately filing his resistance on December 5, 2001. Neither party has requested oral arguments on the motion for summary judgment, and the court has not found such arguments necessary. Also pending before the court is NIAA's January 2, 2002, motion for dismissal of this action as a sanction for failure to comply with an order compelling responses to discovery requests. This case is currently set for trial on February 11, 2002.

## I. INTRODUCTION

Although the court will not attempt an exhaustive discussion of the undisputed and disputed facts presented by the record in this case, some discussion of the factual background is required to put in context Kallich's claims and the parties' arguments for and against summary judgment. Those facts include a synopsis of Kallich's employment with NIAA and the circumstances under which he was terminated from that employment. These facts are drawn primarily from NIAA's statement of material facts in support of its motion for summary judgment, as Kallich did not file in support of his resistance to summary judgment either a response to NIAA's statement of material facts or his own

statement of additional material facts that he contends preclude summary judgment, as required by local rule. *See* N.D. IA. L.R. 56.1(b).

In the spring of 1999, Kallich, who was then working as a staff anesthesiologist at the Veterans Administration Hospital in Cheyenne, Wyoming, responded to an advertisement for an opening for an anesthesiologist with the Mason City Clinic, P.C., in Mason City, Iowa. On or about September 23, 1999, Kallich entered into an employment contract with Mason City Clinic, P.C., which provided, *inter alia*, that "[e]ither party has the right to terminate this Contract and employment under this Contract, however, not until 60 days' written notice of such termination has been given to the other party." Defendant's Statement of Material Facts, Exhibit 3, Mason City Clinic, P.C., Contract, ¶ 6C. At some time after signing the employment contract with Mason City Clinic, P.C., Kallich and his wife traveled to Mason City and entered into a purchase agreement to buy a house. Kallich closed on the purchase of his home in Mason City on December 15, 1999, and began working for the Mason City Clinic, P.C., on or about December 17, 1999.

Defendant NIAA was incorporated on October 7, 1999. Kallich contends that, at the time he negotiated his contract with Mason City Clinic, P.C., he understood that the anesthesiologists in that corporation would be breaking off to form what later became NIAA. Kallich contends further that he was told that he had to enter into a contract with Mason City Clinic, P.C., if he wanted to work for NIAA, which he was told would be formed by January 1, 2000. He was told that, after NIAA was formed, he would switch his

---

**1.** This last claim is identified in Kallich's Complaint as a claim of "retaliation," but he does not dispute NIAA's characterization of the claim as "detrimental reliance/promissory estoppel."

employment to NIAA, but that his employment relationship would remain the same as it had been with the Mason City Clinic, P.C., after the switch.

In any event, on or about December 23, 1999, Kallich entered into an employment agreement with NIAA for a term of employment beginning January 1, 2000, and ending December 17, 2001, "unless terminated earlier as provided in this Agreement." Defendant's Statement of Material Facts, Exhibit 6, NIAA Employment Agreement, ¶ 2. That agreement provided for termination of the agreement, *inter alia,* immediately for cause, *see id.* at ¶ 11(e), or "without cause," as follows:

> Unless otherwise agreed to in writing by Employer and employee, this Agreement shall terminate on the occurrence of any of the following events:
>
> \*     \*     \*     \*     \*     \*
>
> (f) At the option of either Employer or Employee without cause, but only upon ninety (90) days written notice of the effective date of termination. If Employer shall terminate this Agreement without cause and without ninety (90) days written notice required herein, Employee shall be entitled to receive his base salary for the remainder of the ninety (90) days after the date that Employer provides written notice of termination . . .

*Id.* at ¶ 11(f).[2] On December 27, 1999, Kallich entered into a separation agreement with Mason City Clinic, P.C., effective December 31, 1999. Kallich does not dispute that Mason City Clinic, P.C., and NIAA are separate entities, nor does he dispute that, prior to January 1, 2000, he was an employee of Mason City Clinic,

P.C., but from January 1, 2000, on, he was an employee—albeit briefly—of NIAA.

Indeed, Kallich was terminated on January 14, 2000, effective January 26, 2000. He does not dispute that he was paid his salary for ninety days past the effective date of his termination, as required by the provision of his contract with NIAA providing for termination without cause. Kallich does, however, dispute the grounds for his termination. Kallich was notified of his termination during a meeting with Dr. Cross and Dr. Krog on January 14, 2000. During that meeting, Kallich asserts that Dr. Krog told him that he was "not getting along real well with people in the group." Kallich contends that this is the only explanation anyone ever gave him for his termination. He contends, however, that he witnessed two incidents of patient care being jeopardized by anesthesiologists with NIAA, one of which he discussed only with the anesthesiologist involved, and one of which he discussed with members of the practice and other doctors. However, Kallich never reported either incident to the State Board of Medical Examiners, any other licensing or professional review board, any patients, or the hospital management. He contends that there are hints that the real reason for his termination was his complaints about patient care, because, during the January 14, 2000, meeting at which he was notified of his termination, Dr. Cross stated, "This is in response to your previous. . . .," but did not finish the statement. Also, when Kallich asked why he was being terminated, he contends that Dr. Krog answered, "We have documented . . .," but was then "shushed" by Dr. Cross, and never finished the sentence.

---

**2.** The contract also provided the terms for termination without cause by the employee, with or without ninety days notice, *id.,* so that the at-will employment provision was "mutual."

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at

586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach*, 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### B. Discharge In Violation Of Public Policy

#### 1. Arguments of the parties

■ Kallich's first claim is that he was wrongfully discharged in violation of public policy after he expressed concerns about patient care and handling of patients by colleagues at NIAA. NIAA seeks summary judgment on this count, first, because there is no legislatively-mandated public policy upon which Kallich can rely to protect himself from discharge. Moreover, NIAA contends that, even if there is a sufficiently clear legislatively-mandated public policy upon which Kallich can rely,

he has not generated a genuine issue of material fact that his expression of concerns regarding patient care was the "determining factor" in his discharge. Rather, NIAA contends that there is abundant evidence of other valid reasons to terminate Kallich, consisting of evidence of numerous complaints about his unprofessional behavior and evidence that he was not getting along very well with the other employees and shareholders of NIAA. NIAA contends that it is "quite a leap"— not a reasonable inference—from evidence that possible explanations for his termination were cut off or "shushed" to the conclusion that the reason Kallich was terminated was his comments about patient care.

In response, Kallich disputes the necessity of a "legislatively-mandated" public policy as the basis for this claim, arguing instead that it is the clarity of the public policy, not its source, that is determinative of whether that public policy can support a wrongful discharge claim. He argues that court rulings, administrative procedures, and plain common sense establish a clear public policy that healthcare professionals must provide non-negligent care, and that termination of the employment of a doctor who raises concerns about patient care violates that clear public policy. However, even if a "legislatively-mandated" public policy is required, he contends that IOWA CODE CH. 147, which establishes licensing requirements for doctors and medical professionals and peer review committees for professional conduct, and also authorizes malpractice actions and defines the scope of a plaintiff's recovery in such an action, plainly establishes the public policy on which he relies. Kallich contends that inferences that his comments about patient care were the determining factor in his termination arise not only from the truncated comments of Dr. Krog and Dr.

Cross, but from the fact that his colleagues at NIAA thought enough of him, after working with him at the Mason City Clinic, P.C., to offer him a place with the new practice, but then suddenly fired him just two weeks later, shortly after he made comments about patient care. He contends that the only factor that changed in his employment was his expression of concerns regarding patient care.

### 2. Analysis

The Iowa Supreme Court recently explained the requirements for proof of a claim of wrongful discharge in violation of public policy under Iowa law as follows:

> We have identified the elements of an action to recover damages for discharge in violation of public policy to require the employee to establish (1) engagement in a protected activity; (2) discharge; and (3) a causal connection between the conduct and the discharge. *Teachout v. Forest City Community Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998).
>
> These elements properly identify the tort of wrongful discharge when a protected activity has been recognized through the existence of an underlying public policy which is undermined when an employee is discharged from employment for engaging in the activity. *See Tullis v. Merrill*, 584 N.W.2d 236, 239 (Iowa 1998) (public policy in favor of permitting employees to make demand for wages due gives rise to an action for wrongful discharge for making a demand for wages); *Teachout*, 584 N.W.2d at 299 (public policy of this state in favor of reporting suspected child abuse gives rise to an action for wrongful discharge for reporting or intending to report child abuse); *Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994) (public policy of this state in favor of permitting employ-

ees to seek unemployment compensation gives rise to an action for wrongful discharge for seeking partial unemployment benefits); *Springer*, 429 N.W.2d at 560 (public policy of this state in favor of permitting employees to seek workers' compensation for work-related injuries gives rise to an action for wrongful discharge for asserting a right to workers' compensation benefits). However, when we have not previously identified a particular public policy to support an action, the employee must first identify a clear public policy which would be adversely impacted if dismissal resulted from the conduct engaged in by the employee. *See Yockey v. State*, 540 N.W.2d 418, 420–21 (Iowa 1995) (the public policy in favor of permitting employees to seek workers' compensation benefits not jeopardized by termination from employment for missing work following injury); *Borschel v. City of Perry*, 512 N.W.2d 565, 567 (Iowa 1994) (no public policy in favor of presumption of innocence in work place to give rise to an action for wrongful discharge for conduct which resulted in criminal charges); *French*, 495 N.W.2d at 771–72 (presumption of innocence not an actual public policy).

*Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 281–82 (Iowa 2000). In light of the requirement that the plaintiff "identify a clear public policy which would be adversely impacted if dismissal resulted from the conduct engaged in by the employee," the Iowa Supreme Court noted,

> Some courts are beginning to articulate the elements of a cause of action for wrongful discharge as:
>
> 1. The existence of a clear public policy (the clarity element).
> 2. Dismissal of employee under circumstances alleged in the case would jeopardize public policy (the jeopardy element).

3. The plaintiff engaged in public policy conduct and this conduct was the reason for the dismissal (the causation element).

4. Employer lacked an overriding business justification for the dismissal (the absence of justification element). *Gardner v. Loomis Armored, Inc.*, 128 Wash.2d 931, 913 P.2d 377, 382 (1996); *Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, 657 (1995).

This approach is derived from the methodology proposed by Dean and Law Professor Henry H. Perrit, Jr. *See generally* Henry H. Perrit, Jr., *The Future of Wrongful Dismissal Claims: Where Does Employer Self–Interest Lie?*, 58 U. Cin. L.Rev. 397–430 (1989). This four part structure of proof is now detailed in Professor Perrit's multi-volume treatise on the subject. *See* Perritt § 7.9, at 18. This is a helpful guide and actually parallels the approach we have followed in addressing the tort on a case-by-case method.

*Fitzgerald,* 613 N.W.2d at 282 n. 2.

However, in its consideration of the question of what establishes the existence of public policy upon which such a claim can be based, the Iowa Supreme Court *never* held, or even suggested, that the source of the public policy was *restricted* to legislative mandates. Rather, the Iowa Supreme Court commented as follows on the sources of public policy:

In determining whether a clear, well-recognized public policy exists for purposes of a cause of action, we have primarily looked to our statutes but have also indicated our Constitution to be an additional source. *Borschel,* 512 N.W.2d at 567. *We have not been asked to extend our sources of public policy beyond our statutes and Constitution, but recognize other states have used additional sources such as judicial decisions*

*and administrative rules. See generally* [H. Tobias, *Litigating Wrongful Discharge Claims* ] § 5:05–:06, at 16–23 [ (1995) ].

*Fitzgerald,* 613 N.W.2d at 283 (emphasis added); *see also Curtis 1000 v. Youngblade,* 878 F.Supp. 1224, 1255 & n. 31 (N.D.Iowa 1995) (noting that "[a] number of jurisdictions have found public policy to be articulated in the judicial decisions of the state's courts," and citing cases); *Thompto v. Coborn's, Inc.,* 871 F.Supp. 1097, 1116 & n. 10 (N.D.Iowa 1994) ("Although the Iowa Supreme Court has stated that causes of action for tortious discharge in violation of public policy rest on 'certain legislatively declared goals,' *Lara [v. Thomas],* 512 N.W.2d [777,] 782 [ (Iowa 1994) ], and that '[s]uch policies may be expressed in the constitution and the statutes of the state,' *Borschel [v. City of Perry],* 512 N.W.2d [565,] 567 [ (Iowa 1994) ] (citing 82 Am.Jr.2d, *Wrongful Discharge* § 19, at 692 (1992)), this court does not read these cases as suggesting that legislative pronouncements or the state constitution itself are the sole sources of public policy. The language of *Borschel,* 'may be expressed,' is permissive, not mandatory. A number of other jurisdictions have found public policy to be articulated in the judicial decisions of the state's court.") (also citing cases). Thus, while the Iowa Supreme Court has never been asked to extend the cause of action beyond public policy rooted in statutes and the state constitution, if anything, in *Fitzgerald,* the Iowa Supreme Court recognized the possibility that other sources of public policy upon which a cause of action could be based might include "judicial decisions and administrative rules." *Fitzgerald,* 613 N.W.2d at 283.

The court has considerable doubt that any public policy concerning competent healthcare would protect what amounts to

little more than comments indicating a disagreement between doctors over patient care, as opposed to actual complaints to a hospital or other professional review committee or licensing authority. *Cf. Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 685 (Iowa 2001) (noting that "Iowa Code section 135C.46 declares a clear public policy against retaliatory discharge for initiating or participating in a complaint against a health care facility," where the statutory language prohibited retaliation against "a resident or an employee of the facility who has *initiated or participated in any proceeding authorized by this chapter*") (emphasis added). However, this court need not delve more deeply into the issue of whether a public policy against the discharge of a doctor for comments to colleagues about patient care is "clear [and] well-recognized" in Iowa. *See id.* Assuming, without deciding, that such a public policy is "clear [and] well-recognized," Kallich has not generated a genuine issue of material fact that his conduct purportedly protected by such a public policy was the determining factor in his discharge. *See Fitzgerald*, 613 N.W.2d at 281 (third element of a wrongful discharge claim, where the public policy has been recognized, is "a causal connection between the conduct and the discharge").

■ First, Kallich has not properly disputed the issue, because he has failed to comply with the local rule defining the manner in which a party resisting summary judgment is required to respond to the movant's statement of undisputed facts. *See* N.D. Ia. L.R. 56.1(b).[3] Kallich filed only a brief in resistance to NIAA's motion for summary judgment, with no supporting response to NIAA's statement of facts demonstrating the disputed nature of the facts in the record, no statement of additional facts, and no additional appendix of supporting materials. *See id.* Thus, the court could strike Kallich's resistance for non-conformity with requirements of the local rules, and grant NIAA's motion for summary judgment accordingly. Moreover, Kallich's lack of an adequate response to NIAA's motion means that he has not borne his burden under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to

---

3. The pertinent portion of the local rule regarding summary judgment motions provides as follows:

   **b. Resisting Party's Papers.** A party resisting a motion for summary judgment must, within 21 days after service of the motion, serve and file contemporaneously all of the following:

   1. A brief in conformity with LR 7.1(e) in which the resisting party responds to each of the grounds asserted in the motion for summary judgment;

   2. A response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact;

   3. A statement of additional material facts that the resisting party contends preclude summary judgment; and

   4. An appendix, as explained in section (e) of this rule.

   A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. *The failure to respond to an individual statement of material fact constitutes an admission of that fact.*

   Each individual statement of additional material fact must be concise, numbered separately, and supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement, with citations to the appendix containing that part of the record.

   N.D. Ia. L.R. 56.1(b) (emphasis added).

interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325.

Even if the court considers the record concerning the circumstances under which Kallich was discharged, views all the facts in the light most favorable to Kallich, and gives him the benefit of all *reasonable inferences* that can be drawn from the facts, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same), the court cannot find that a jury question on "causation" has been generated. Innuendo from unfinished comments that *might* have given a reason for Kallich's termination do not reasonably generate a genuine issue of material fact that he was terminated for making comments about patient care, at least not when his termination was pursuant to a "without cause" provision of his contract, and thus NIAA was not compelled to give any reason at all for his termination. Nor does the timeline here generate a genuine issue of material fact that the *only* reason for Kallich's termination, *i.e.*, the only thing that changed prior to his termination, was his comments about patient care. Rather, Kallich's combined employment with Mason City Clinic, P.C., and NIAA was so brief—from December 17, 1999, to January 14, 2000—that there can be no inference of adequate job performance or otherwise appropriate working relationships, and there is copious, unrebutted evidence that Kallich had engaged in conduct that alienated his colleagues.

Because Kallich has failed to make a sufficient showing on the essential "causation" element of his wrongful discharge claim, NIAA is "entitled to judgment as a matter of law" on Kallich's wrongful dis-

charge claim. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re TMJ Litig.*, 113 F.3d at 1492.

## C. Breach Of Covenant Of Good Faith And Fair Dealing

Kallich's second claim is that he was terminated in violation of the covenant of good faith and fair dealing implied in his employment contract. NIAA contends that the Iowa Supreme Court has never recognized—and indeed has expressly rejected—such a cause of action in the employment context, citing, *inter alia*, *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 281 (Iowa 2000). In his response to NIAA's motion for summary judgment, Kallich agrees that this cause of action is not recognized under Iowa law, and voluntarily dismisses this portion of his Complaint. Thus, Kallich's second cause of action will be dismissed.

## D. Detrimental Reliance

Kallich's final claim is that his termination was contrary to reasonable expectations, on which he detrimentally relied, that he would be employed for an extended period of time, not just a few weeks. NIAA argues, first, that Kallich was initially employed by Mason City Clinic, P.C., and that NIAA was not even in existence at the time Kallich entered into an employment contract with Mason City Clinic, P.C., so that any promises or expectations concerning extended employment on which Kallich detrimentally relied came from conduct of Mason City Clinic, P.C., not NIAA. NIAA points out, further, that Kallich signed a release of claims against Mason City Clinic, P.C., when he signed his separation agreement with that corporation in December 1999. NIAA next argues that, even if it is the "right defendant" on this claim, Kallich could not have reasonably relied to his detriment on an expectation of extended employment in the face of language in his employment con-

tracts with both Mason City Clinic, P.C., and NIAA that provided that he could be terminated without cause. Finally, NIAA argues that Kallich has not alleged, and the record does not reveal, any factual basis for any of the elements of Kallich's detrimental reliance claim.

In response, Kallich argues that NIAA can be liable on his detrimental reliance claim, because expectations of extended employment flowed from pre-formation conduct of NIAA's promoters. He argues that representatives of NIAA made it clear to him that NIAA would be created, and that he would ultimately be employed with that entity, but that in the interim before NIAA was incorporated he had to enter into an employment contract with Mason City Clinic, P.C.

In *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43 (Iowa 1999), the Iowa Supreme Court stated the elements of promissory estoppel as follows: "(1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise." *Schoff*, 604 N.W.2d at 49. The court finds that Kallich cannot generate any genuine issues of material fact on his "detrimental reliance" claim for the same reasons that he could not do so on his wrongful discharge claim, that is, because of his failure to comply with N.D. IA. L.R. 56.1(b), Rule 56(e) of the Federal Rules of Civil Procedure, and applicable case law specifying his burden in resisting a motion for summary judgment. In addition, Kallich cannot prevent summary judgment on this claim, because as a matter of law he cannot establish the third (reasonable reli-

ance) or fourth (injustice) elements of such a claim. *See Schoff*, 604 N.W.2d at 49. Kallich could not have reasonably relied to his detriment on any promise or conduct of NIAA's or Mason City Clinic's representatives concerning long-term employment in the face of provisions in his employment contracts with both Mason City Clinic, P.C., and NIAA that provided for termination without cause, *see* Defendant's Statement of Material Facts, Exhibit 6, NIAA Employment Agreement, ¶ 11(f), and Exhibit 3, Mason City Clinic, P.C., Contract, ¶ 6C, nor is there any "injustice" to be avoided in the face of such contractual provisions.

NIAA is therefore entitled to summary judgment on this claim, as well.

### III. CONCLUSION

Kallich has failed to generate genuine issues of material fact that would preclude summary judgment in NIAA's favor on his claims of wrongful discharge in violation of public policy and detrimental reliance/promissory estoppel. Kallich has also voluntarily dismissed his claim of breach of covenant of good faith and fair dealing on the ground that such a claim has never been recognized under Iowa law in the employment context.

THEREFORE,

1. Kallich's claim of breach of covenant of good faith and fair dealing is **dismissed** upon plaintiff's motion.

2. NIAA's September 6, 2001, motion for summary judgment is granted as to Kallich's claims of wrongful discharge and detrimental reliance/promissory estoppel, but **denied as moot** as to Kallich's claim of breach of covenant of good faith and fair dealing.

3. NIAA's January 2, 2002, motion for dismissal of this action as a sanction for failure to comply with an order compelling

responses to discovery requests is also **denied as moot.**

This disposition of Kallich's claims entirely resolves this action. Judgment shall enter accordingly.

**IT IS SO ORDERED.**